Kara A. Larsen, WSBA No. 19247
Office of the Attorney General
Labor and Personnel Division
PO Box 40145
Olympia, WA 98504-0145
(360) 664-4167

The Honorable Robert J. Bryan

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

| | |
|---|---|
| HILDA L. SOLIS, Secretary of Labor, United State Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF WASHINGTON, DEPARTMENT OF CORRECTIONS,<br><br>Defendant. | NO.  3:08-cv-05362-RJB<br><br>DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>NOTED FOR AUGUST 14, 2009 |

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

NOTED FOR AUGUST 14, 2009
NO.  3:08-CV-05362-RJB

1

ATTORNEY GENERAL OF WASHINGTON
Labor & Personnel Division
7141 Cleanwater Drive SW
PO Box 40145
Olympia, WA 98504-0145
(360) 664-4167

## I.   INTRODUCTION

Plaintiff United States Department of Labor (DOL), alleges that Defendant State of Washington, Department of Corrections (DOC) violated section 11(c) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 211(c)(1985), which requires employers to "make, keep, and preserve" records of wages and work hours as "prescribed by regulation."  The Secretary asserts that: (1) DOC was not entitled to utilize the "fixed schedule" method of recordkeeping; and (2) DOC failed to maintain the proper records of changes to employee schedules.  DOL's argument fails on both counts.

DOL also seeks summary judgment with respect to the affirmative defenses of waiver and laches raised in the answer to the Complaint.  The Court should deny this part of DOL's motion as well because there are disputed issues of material fact precluding judgment as a matter of law.

## II.   STATEMENT OF MATERIAL FACTS

DOC designates a seven day workweek for each of its employees and approves a forty-hour schedule within that workweek.  For example, though most employees have a Sunday through Saturday workweek, some employees have a Wednesday through Tuesday workweek and some have a Friday noon to Friday noon workweek to accommodate what is known as the 9/80 schedule.  *See* Declaration of Kara A. Larsen in Support of Defendant's Response to Plaintiff's Motion for Summary Judgment (Larsen Decl.), Ex. A.  Within the workweek, there are a variety of possible schedules.  Most employees are assigned a fixed schedule of Monday through Friday, 8 a.m. to 5 p.m.  However, employees may also request an alternate work schedule of four ten hour days, or a 9/80 schedule, which is a compressed schedule allowing a day off every other week.  Larsen Decl., Ex. A. Whatever work schedule is approved for an employee, it is a fixed schedule, meaning that it is the schedule of daily hours that the employee normally works.

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

NOTED FOR AUGUST 14, 2009
NO.  3:08-CV-05362-RJB

2

ATTORNEY GENERAL OF WASHINGTON
Labor & Personnel Division
7141 Cleanwater Drive SW
PO Box 40145
Olympia, WA  98504-0145
(360) 664-4167

1        Some employees adhere strictly to their established work schedules.  For example,

2   Community Corrections Assistants (CCA), Community Corrections Officers (CCO) doing

3   intakes, and CCOs and Community Corrections Specialists (CCS) involved in programs rather

4   than direct community supervision work their normal schedules and have very little need to

5   flex their work hours within the week.  *See, e.g.,* Declaration of Anne Fiala in Support of

6   Defendant's Motion for Summary Judgment (Fiala Decl.) at ¶ 5; Declaration of Sieu K. Che

7   Dated July 21, 2009 (Che Decl.), Exs. A.1 at ¶ 14; A.3 at ¶ 7; A.4 at ¶ 6; A.5 at ¶¶ 6, 8; A.6 at

8   ¶¶ 7, 12; A.10 at ¶ 7; A.11 at ¶ 7; A.13 at ¶¶ 3, 10; A.21 at ¶ 7; A.22 at ¶ 5, 6; A.23 at ¶ 6; A.25

9   at ¶ 6; A.27 at ¶¶ 7, 8; A.29 at ¶ 6; A.32 at ¶ 14; A.37 at ¶ 8; A.38 at ¶ 5, A.45 at ¶ 6; A.48 at ¶

10  6; A.51 at ¶ 6; A.52 at ¶ 4; A.53 at ¶ 5; A.55 at ¶¶ 9, 10; A.56 at ¶ 7.

11       If, for some reason, employees deviate from the assigned work schedule, DOC tracks

12  that deviation in several ways.  Employees complete a leave request form when they will be

13  absent from the workplace and performing no duties, such as for sick leave or vacation.  Larsen

14  Decl., Ex. B. Employees complete an overtime request form when they are approved to work

15  beyond their 40 hour schedule.  Larsen Decl., Ex. C. These forms are approved by a supervisor

16  and transmitted to payroll so that the employee is properly paid, either through a deduction

17  from accrued leave, accumulation of compensatory time, or through payment at the overtime

18  rate.  When the employee still works 40 hours, but merely deviates from the assigned schedule

19  on a given day, DOC uses a less formal method of tracking.  Larsen Decl., Ex. D.

20  **III.    ARGUMENT**

21  **A.    DOC Fully Complied With DOL's Recordkeeping Regulations**

22         **1.    DOC properly used an exception timekeeping system and**
             **maintained all required records.**

23       DOL claims that DOC was not permitted to use the "exception" system specifically

24  envisioned by the regulations.  As noted in 29 C.F.R. § 516.1 (2006), "[n]o particular order or

25  form of records" is required, and employers need only maintain records from which basic

26

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

NOTED FOR AUGUST 14, 2009
NO.  3:08-CV-05362-RJB

3

ATTORNEY GENERAL OF WASHINGTON
Labor & Personnel Division
7141 Cleanwater Drive SW
PO Box 40145
Olympia, WA 98504-0145
(360) 664-4167

1    employee data can be derived.  29 C.F.R. § 785.48(a)(1985).  Indeed, employers may rely on

2    work schedules for employees who are assigned fixed schedules.

3    
4    
5    
6    
7    

> With respect to employees working on fixed schedules, an employer may maintain records showing instead of the hours worked each day and each workweek as required by paragraph (a)(7) of this section, the schedule of daily and weekly hours the employee normally works.  Also,
> (1) In weeks in which an employee adheres to this schedule, indicates by check mark, statement, or other method that such hours were in fact worked by him, and
> (2) In weeks in which more or less than the scheduled hours are worked, shows that exact number of hours worked each day and each week.

8    29 C.F.R. § 516.2(c).

9    This type of exception time reporting is exactly what DOC did when DOL began its

10   investigation.[1]  DOC assigned each employee a fixed schedule of hours and recorded that

11   schedule in the payroll system.  The employees are generally expected to work their schedules,

12   and many employees did and continue to work their assigned schedule.  *See* Fiala Decl. at ¶ 8.

13   Thus, DOC clearly met the first part of the regulation.

14   What is at issue here is the second part of the regulation, *i.e.*, what is required in weeks

15   in which the employee works more or less than the scheduled hours?  Interpretation of a

16   regulation begins with the language itself.  *U.S. v. Bucher*, 375 F.3d 929, 932 (9th Cir. 2004).

17   "In weeks in which more or less than the scheduled hours are worked, shows that exact number

18   of hours worked each day and each week."  29 C.F.R. § 516.2(c)(2).  The regulation is

19   addressing workweeks in which more or less than the scheduled hours are worked, not

20   individual workdays.  The scheduled hours in a week are 40.  Thus, the regulation on its face

21   requires that, when the employee works more or less than 40 hours in a workweek, the

22   employer record the daily hours that week to show what caused the deviation from the standard

23   40 hour workweek. In our case, if DOC employees worked more than 40 hours in a week, they

24   were required to report those exceptions to the usual schedule on a form and submit it for

25   approval.  Fiala Decl. at ¶ 8.  The evidence shows that these employees were paid for all

26   
---
[1] As discussed *supra*, DOC later implemented an affirmative time keeping system. Fiala Decl. at ¶ 9.

DEFENDANT'S RESPONSE TO                          4
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

NOTED FOR AUGUST 14, 2009
NO.  3:08-CV-05362-RJB

ATTORNEY GENERAL OF WASHINGTON
Labor & Personnel Division
7141 Cleanwater Drive SW
PO Box 40145
Olympia, WA  98504-0145
(360) 664-4167

1    overtime so reported, and that DOC properly maintained records of the hours worked each day

2    and the payment made.  For those weeks, therefore, there was no recordkeeping violation.  If

3    DOL claims that DOC failed to keep records of any employee who worked more than 40 hours

4    in the week, that would create a factual issue for trial.

5          In addition, DOC required employees who took leave and worked less than 40 hours in

6    the week to report those exceptions to the usual schedule on a form and submit it for approval.

7    Fiala Decl. at ¶ 8.  DOL presents no evidence that any employee worked fewer than 40 hours

8    in any week without submitting the necessary documentation.  If DOL submits any contrary

9    evidence on reply, it merely would create a factual dispute for trial.

10         DOL nonetheless argues that any deviation from the normal schedule on any workday

11    requires that the employer record the actual hours worked each day of that workweek, even if

12    the employee still works a total of 40 hours that week.  At most, DOL's position creates a

13    conflict in interpretation of the regulations.

14         If the Court finds that there is an ambiguity regarding the requirements of the

15    regulation, and therefore DOC's compliance, the Court is not bound by DOL's interpretation.

16    Although courts generally afford deference to an agency's construction of its own regulation,

17    deference is not absolute. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917,

18    931 (9th Cir. 2008); *see also Webber v. Crabtree,* 158 F.3d 460, 461 (9th Cir.1998) ("Although

19    we accord a high degree of deference to an agency's interpretation of its own regulation, that

20    interpretation cannot be upheld if it is plainly erroneous or inconsistent with the regulation.").

21    In interpreting an ambiguous regulation, courts conduct a "two-pronged analysis." *Wildlife*

22    *Fed'n,* 524 F.3d at 931.  First, considering the plain language of the regulation, the Court must

23    inquire whether the words of the regulation are reasonably susceptible to the DOL's

24    construction, both on their face and in light of any prior interpretation and application. *Id.*

25    Second, the Court must review DOL's interpretation to determine whether it is "consistent with

26

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

NOTED FOR AUGUST 14, 2009
NO.  3:08-CV-05362-RJB

5

ATTORNEY GENERAL OF WASHINGTON
Labor & Personnel Division
7141 Cleanwater Drive SW
PO Box 40145
Olympia, WA 98504-0145
(360) 664-4167

1   and in furtherance of the purposes and policies" of the FLSA.  *Id.*  DOL's interpretation of the

2   fixed schedule regulation fails on both counts and is not entitled to deference.

3          First, DOL's interpretation is not consistent with the language of the regulation.  As

4   noted above, the regulation refers to "weeks" in which the employee works more or less than

5   the scheduled hours, not days in which the employee works more or less than the scheduled

6   hours.  Further, the "interpretation" that DOL proffers here does not constitute an agency

7   interpretation.  DOL cites to the deposition testimony of District Director Donna Hart and to a

8   20-year old section of the Field Operations Handbook (FOH).  An agency interpretation on a

9   matter of law must be adopted and applied as a matter of agency policy.  An agency

10  employee's testimony in a deposition or declaration, even that of a District Director, does not

11  rise to the level of an agency interpretation.  *See Irving v. U.S.*, 162 F.3d 154, 166 (1st Cir.

12  1998) (declining to accord deference to OSHA area directors or compliance officers on OSHA

13  policy requirements because not official policymakers); *Cowiche Canyon Conservancy v.*

14  *Bosley*, 118 Wn.2d 801, 815, 828 P.2d 549 (1992) (refusing to defer to agency interpretation

15  set forth in trial testimony because (1) the "agency either has an agency interpretation or it does

16  not," (2) interpretations as to matters of law should not be "based upon trial testimony," and (3)

17  any agency interpretation must be "adopted and applied . . . as a matter of agency policy").  In

18  the absence of official and long-standing interpretations on a subject, agencies cannot use

19  employee opinion to "bootstrap a legal argument into the place of agency interpretation."

20  *Bosley*, 118 Wn.2d at 815.

21         Nor can the Field Operations Handbook be considered an official interpretation.  *See*

22  *Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251, 1255 (11th Cir. 2001) (Field Operations

23  Handbook without the force of law and not entitled to deference).  The DOL itself disclaims

24  the FOH as establishing interpretive policy.  *See* http://www.dol.gov/esa/whd/FOH/index.htm

25  (last visited Aug. 8, 2009), hard copy attached. *See* Larsen Decl., Ex. E.  Accordingly, DOL's

26  "interpretation" of the regulation is entitled to no deference.

DEFENDANT'S RESPONSE TO                          6          ATTORNEY GENERAL OF WASHINGTON
PLAINTIFF'S MOTION FOR PARTIAL                              Labor & Personnel Division
SUMMARY JUDGMENT                                            7141 Cleanwater Drive SW
                                                                  PO Box 40145
                                                            Olympia, WA  98504-0145
NOTED FOR AUGUST 14, 2009                                        (360) 664-4167
NO.  3:08-CV-05362-RJB

1     Second, the recordkeeping requirements in 29 C.F.R. § 516.2 apply to "employers of

2     employees to whom both the minimum wage provisions of section 6 or the minimum wage

3     provisions of section 6 and the overtime pay provisions of section 7(a) of the [FLSA] apply."

4     29 C.F.R. § 516.1(b)(1).  Thus, the purpose of timekeeping is to ensure that employers are

5     complying with sections 6 and 7 of the FLSA and the policy of properly compensating

6     employees for time worked in excess of 40 hours.  As a matter of common sense, then, when

7     an employee works 40 hours and is paid for 40 hours, subsection (2) of the regulation should

8     not be implicated.  The requirement of tracking the "exact" hours does not further the purpose

9     of FLSA when the employee works 40 hours, and should only kick in when the employee does

10    not work 40 hours in a workweek.

11         DOL's interpretation would place an unreasonable burden on employers to require that

12    the timekeeping protocol must change whenever an employee arrives 15 minutes late or leaves

13    15 minutes early one day and makes up the time on a different day of the week, simply because

14    the exact schedule was not worked, even though the employer is otherwise in complete

15    compliance with the FLSA's pay provisions.  It turns the recordkeeping provision into a game

16    of "gotcha."  This is evidenced by Roberta Sondgeroth's testimony that in 11 years as an

17    investigator, she has only found four employers in compliance with the recordkeeping

18    provisions.  Che Decl., Ex. C at 80:8.  This is also evidenced by the Secretary's argument in

19    her motion that DOC failed to keep records of actual hours worked for the "other days" in a

20    week for which the DOC paid employees overtime.  *See* Plaintiffs Motion for Partial Summary

21    Judgment at. 7, ll. 13-15.  So, when employees report overtime and DOC pays it, and there is

22    no violation of section 7 of the FLSA, the DOL still strains to find a violation to impose on

23    DOC.

24         The logical and reasonable interpretation of subsection (2) of 29 C.F.R. 516.2(c) is that

25    an employer need only track the actual hours worked in those workweeks in which an

26

DEFENDANT'S RESPONSE TO                          7              ATTORNEY GENERAL OF WASHINGTON
PLAINTIFF'S MOTION FOR PARTIAL                                      Labor & Personnel Division
SUMMARY JUDGMENT                                                   7141 Cleanwater Drive SW
                                                                         PO Box 40145
                                                                    Olympia, WA 98504-0145
NOTED FOR AUGUST 14, 2009                                             (360) 664-4167
NO.  3:08-CV-05362-RJB

1   employee with a fixed schedule works more or less than 40 hours, and the evidence shows that

2   the proper records were maintained for those weeks.

3        Even if the Secretary's onerous interpretation is followed, the Secretary has presented

4   no evidence showing that any of the Complaint's Exhibit A employees falls outside the "fixed

5   schedule" provision, or that DOC failed to track the flex hours within a workweek.  In fact,

6   employees who wanted to modify or flex their schedule within a workweek were expected to

7   obtain approval or notify their supervisors.  Fiala Decl. at ¶¶ 6-8.  They typically did this.  *See,*

8   *e.g.,* Che Decl., Ex. A; Larsen decl., Ex. D.  DOC further required employees who took leave

9   and worked less than 40 hours or who worked more than 40 hours in a workweek to report

10  those exceptions to the usual schedule on a form and submit it for approval.  Fiala Decl. at ¶ 8.

11       DOL's investigator admitted that using schedules and exception reporting to track time

12  was appropriate for employees who obeyed DOC's policies.[2]  Che Decl., Ex. C at 78:10-20.

13  Ms. Sondgeroth further conceded that nothing in DOC's written policies was improper or

14  illegal.  *Id*. at 144:20-23.

15       In its Motion, however, DOL contradicts its investigator's admissions.  DOL now

16  argues that DOC's exception time reporting is a "sham" because the exception method is

17  permissible only where an employee's schedule "rarely varies."  As discussed above, Ms.

18  Hart's opinion is not entitled to any deference on this issue.

19       Further, the evidence shows that many Exhibit A employees work a schedule with little

20  variation.  Community Corrections Assistants (CCA), Community Corrections Officers (CCO)

21  doing intakes, and CCOs and Community Corrections Specialists (CCS) involved in programs

22  rather than direct community supervision work their normal schedule and have very little need

23  to flex their work hours within the week.  Fiala Decl. at ¶ 5; Che Decl., Exs. A.1 at ¶ 14; A.3 at

24

25  [2] DOC's system was not much different than the one that DOL uses for *its* nonexempt employees.  DOL trusts
    its busy and dedicated investigators, including Ms. Sondgeroth, to accurately report time worked without time in
26  and time out information (Che Decl., Ex. C at 25:5-9), even though it refuses to extend such deference to DOC's
    busy and dedicated professionals.

DEFENDANT'S RESPONSE TO              8            ATTORNEY GENERAL OF WASHINGTON
PLAINTIFF'S MOTION FOR PARTIAL                        Labor & Personnel Division
SUMMARY JUDGMENT                                      7141 Cleanwater Drive SW
                                                            PO Box 40145
NOTED FOR AUGUST 14, 2009                              Olympia, WA 98504-0145
NO.  3:08-CV-05362-RJB                                     (360) 664-4167

¶ 7; A.4 at ¶ 6; A.5 at ¶¶ 6, 8; A.6 at ¶¶ 7, 12; A.10 at ¶ 7; A.11 at ¶ 7; A.13 at ¶¶ 3, 10; A.21 at ¶ 7; A.22 at ¶ 5, 6; A.23 at ¶ 6; A.25 at ¶ 6; A.27 at ¶¶ 7, 8; A.29 at ¶ 6; A.32 at ¶ 14; A.37 at ¶ 8; A.38 at ¶ 5, A.45 at ¶ 6; A.48 at ¶ 6; A.51 at ¶ 6; A.52 at ¶ 4; A.53 at ¶ 5; A.55 at ¶¶ 9, 10; A.56 at ¶ 7.  Thus, there is a large segment of Exhibit A employees for whom deviation from the assigned schedule would be infrequent.  DOL presents no evidence as to how often many Exhibit A employees actually deviated from their daily schedules or how often that occurred. Accordingly, DOL's Motion for Summary Judgment must be denied because there is an individual issue of fact for each Exhibit A employee as to the applicability of the "fixed schedule" provision of the regulation.

The Court should also deny DOL's Motion because DOC does record when employees take leave, work overtime, or flex their schedule within the workweek.  As noted above, the FLSA does not require that time records be kept in any particular form.  29 C.F.R. § 516.1.  In response to DOL's discovery requests, DOC has produced voluminous records of leave requests, overtime requests, comp time requests, and day to day adjustments of schedules. *See* Larsen Decl., Exs. B-D.

There is a significant issue of material fact, therefore, regarding whether DOC documented each change in schedule by each Exhibit A employee, and no overarching summary judgment may be entered.

> **2.** **Statements made by Roberta Sondgeroth in her Declaration in support of DOL's Motion and the attached exhibits do not comply with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure and should be stricken.**

In support of its Motion, DOL submitted a declaration from Roberta Sondgeroth with copies of her notes from twelve employee interviews.  The Court should strike portions of paragraphs 5 and 6 of Ms. Sondgeroth's declaration as well as all the exhibits thereto.

Fed. R. Civ. P. 56(e) states that an affidavit "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

NOTED FOR AUGUST 14, 2009
NO.  3:08-CV-05362-RJB

9

ATTORNEY GENERAL OF WASHINGTON
Labor & Personnel Division
7141 Cleanwater Drive SW
PO Box 40145
Olympia, WA  98504-0145
(360) 664-4167

1    affiant is competent to testify to the matters stated therein." Declarations do not satisfy the

2    requirements of Rule 56(e) if they are not based on personal knowledge, or if they contain

3    inadmissible hearsay, conclusory allegations, or argument. *E.g.*, *Norita v. Northern Mariana*

4    *Islands*, 331 F.3d 690, 697-98 (9th Cir. 2003) (finding affidavits about improper deductions in

5    pay inadequate under Rule 56(e)); *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir.

6    2001) (statements that lack personal knowledge or that are based on hearsay are inadmissible);

7    *Kamen v. American Telephone & Telegraph Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (no

8    conclusory allegations); Fed. R. Evid. 602, 803. Of course, as the party seeking admission of a

9    statement, DOL "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng. Co.*,

10   284 F.3d 999, 1004 (9th Cir. 2002).

11       Initially, portions of Ms. Sondgeroth's declaration should be stricken because they are

12   not based on her personal knowledge and constitute hearsay. Ms. Sondgeroth testified:

13       Q.    [D]o you have personal knowledge of observing whether or not [DOC
               employees] worked overtime?
14       A.    No.
         Q.    Other than what these individuals told you do you have any personal knowledge
15             as to whether or not they followed or did not follow their schedules?
         A.    No.
16

17   Che Decl., Ex. C at 85:21-86:7. Nevertheless, in the second sentence in paragraph 6 of Ms.

18   Sondgeroth's declaration, she attempts to state and summarize information gathered from

     others. This sentence is inadmissible and should be stricken. *See Norita*, 331 F.3d at 697-98.
19

20       In addition, portions to Ms. Sondgeroth's declaration constitute inadmissible argument

21   and/or unsubstantiated factual conclusions that should be stricken.[3] In the second sentence of

22   paragraph 5, Ms. Sondgeroth states that she was acting consistent with "Wage Hour policy"

23   when she took notes of interviews; however, she fails to identify what policy and how it was

24   ――――――――――――――――――

25       [3] Although DOL seemingly does not claim that Ms. Sondgeroth is an expert, it is clear that she is not.
     Her position requires no specific degree, she has a degree in music, and she has no training in human resources,
     payroll, or business management. Che Decl. Ex. C. at 16:18-17:18. Indeed, beyond her previously discussed
26   admissions that she has no training in sampling, Ms. Sondgeroth admitted that she has no training in economics
     and that her calculations are "simple mathematics" that do not even require a formula. *Id.* at 86:15-23.

DEFENDANT'S RESPONSE TO                              10                ATTORNEY GENERAL OF WASHINGTON
PLAINTIFF'S MOTION FOR PARTIAL                                              Labor & Personnel Division
                                                                            7141 Cleanwater Drive SW
SUMMARY JUDGMENT                                                                 PO Box 40145
                                                                            Olympia, WA 98504-0145
                                                                               (360) 664-4167
NOTED FOR AUGUST 14, 2009
NO. 3:08-CV-05362-RJB

1    consistent.  During her deposition, Ms. Sondgeroth repeatedly testified that she did not always

2    follow policy or that policies were contradictory and always changing.  *See, e.g.*, Che Decl.,

3    Ex. C at 263:7-21 (did not cover "all shifts, work schedules and locations" even though

4    required), 264:2-265:11 (did not obtain statements about other employee, by name, even

5    though required), 283:7-284:9 (statements were not under oath; DOL keeps changing whether

6    to put them under oath).  Similarly, in the second sentence of paragraph 6, Ms. Sondgeroth

7    states that the 12 statements she attached are "representative," but she does not explain what

8    they represent or how she was able to make that determination.  In contrast, during her

9    deposition, Ms. Sondgeroth admitted that she has no training on sampling technique, did not

10   attempt to achieve statistically significant samples, did not control the sampling process (even

11   though Wage and Hour training materials specified that she should have done so), and did not

12   assure a twenty percent sample by location (even though training materials specified that she

13   should have done so).  Che Decl., Ex. C at 19:19-21:1, 105:7-13, 275:7-276:12, 266:11-

14   268:10.  Because these portions of Ms. Sondgeroth's declaration are conclusory and contradict

15   her prior testimony, they should be stricken.  *E.g.*, *Rogers v. City of Chicago*, 320 F.3d 748,

16   751 (7th Cir. 2003) (excluding conclusory and contradictory statements).

17        Third, the 12 statements attached to Ms. Sondergeroth's declaration should be excluded

18   as hearsay.[4]  These statements are not under oach and are submitted for the truth of the matter.

19   Fed. R. Evid. 801(c).  DOL argues that Ms. Sondgeroth's notes are not hearsay because they

20   are "statement[s] by the party's agent or servant concerning a matter within the scope of the

21   agency or employment, made during the existence of the relationship" under ER 801(d)(2)(D).

22   This exception to the hearsay rule does not apply for a number of reasons.  Initially, the

23
24        [4] The statements should also be stricken because they are filled with conclusory and argumentative
     statements rather than statements of fact.  The problems with these statements are detailed on page 3, lines 6-10,
25   of the Court's Order Denying Motion to Declare Matters Admitted.  Certainly, none of the declarations state that
     informal records of shift changes and formal overtime request forms are not maintained by DOC in addition to
26   employee schedules.  The conclusory statements made should be stricken.  *Rogers*, 320 F.3d at 751; *see generally*
     *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 111 L.Ed.2d 695 (1990) (conclusory, non-
     specific statements in affidavits are not sufficient).

DEFENDANT'S RESPONSE TO                    11        ATTORNEY GENERAL OF WASHINGTON
PLAINTIFF'S MOTION FOR PARTIAL                                  Labor & Personnel Division
SUMMARY JUDGMENT                                                7141 Cleanwater Drive SW
                                                                      PO Box 40145
NOTED FOR AUGUST 14, 2009                                        Olympia, WA 98504-0145
NO.  3:08-CV-05362-RJB                                              (360) 664-4167

1    attachments to Ms. Sondgeroth's declaration are not statements by DOC employees; instead,

2    they are Ms. Sondgeroth's notes. Moreover, these purported statements of unnamed DOC

3    employees do not fall within the general topic of subsection (2), admissions by a party-

4    opponent. Rather than being party-opponents, the employees providing these statements are

5    apparently aligned with and advocates for DOL. The self-serving statements of employees in

6    support of a claim against the employer should not be allowed to prove that claim under the

7    guise of admissions of the employer.

8         Finally, DOL has not established the requisite foundation to show that the statements

9    relate to matters within the scope of employment for the unnamed individuals. To accomplish

10   this, a party must establish the identity of the author of the statement, that the statement is

11   within the scope of their employment, and that it was made during the existence of the

12   relationship. *See Sea-Land Serv., Inc. v. Lozen Int'l, LLC.*, 285 F.3d 808, 821 (9th Cir. 2002).

13   Here, DOL has not identified the alleged authors, demonstrated that they were employed by

14   DOC at the time of the statements, nor demonstrated that their job duties involved making

15   public and binding statements to the DOL. Indeed, none of the Exhibit A employees are in a

16   position to make binding admissions on behalf of DOC. Under these circumstances, ER

17   801(d)(2)(D) does not apply and the materials should be stricken. *Pfingston v. Ronan Eng.*

18   *Co.*, 284 F.3d 999, 1004 (9th Cir. 2002).[5]

19   **B.    DOC Instituted a New Timekeeping System Which Remedies Any Alleged**
20   **       Violation and Precludes Injunctive Relief.**

21        At the insistence of DOL, DOC implemented a new timekeeping system effective

22   November 28, 2007. All employees within the Community Corrections Division fill out a

---

24        [5] DOL has taken the position that any discussions or statements by DOC employees are covered by the
25   government informant's privilege. DOC certainly did not employee Exhibit A employees as undercover
     informants to investigate DOC's operations, thus their statements to DOL are clearly beyond their regular duties.
26   If, however, the Court holds that such statements count as admissions by DOC, then DOC is entitled to full and
     unredacted copies of those statements pursuant to Fed. R. Civ. P. 26(b)(3)(C)

DEFENDANT'S RESPONSE TO                          12        ATTORNEY GENERAL OF WASHINGTON
PLAINTIFF'S MOTION FOR PARTIAL                                   Labor & Personnel Division
SUMMARY JUDGMENT                                                7141 Cleanwater Drive SW
                                                                     PO Box 40145
                                                                Olympia, WA 98504-0145
                                                                    (360) 664-4167
NOTED FOR AUGUST 14, 2009
NO.  3:08-CV-05362-RJB

1    timesheet showing the hours they work each day.  Fiala Dec. at ¶ 9.  They submit the timesheet

2    weekly to their supervisor and certify the accuracy of the hours.

3            In her motion, the Secretary admits that the alleged recordkeeping violation does not

4    extend to the DOC's new timekeeping system that requires employees to regularly record

5    actual hours worked each day.  *See* Motion at 2 ll. 9-15.  Therefore, the Court should find that,

6    if there was any violation, it has been remedied by the institution of the daily timekeeping

7    system.

8    **C.      DOC's Affirmative Defenses Of Waiver And Laches Create Genuine Issues Of**
         **Material Fact**
9
             The Secretary also seeks summary judgment with respect to the affirmative defenses of
10
     waiver and laches raised by DOC in its answer to the Complaint.  The Court should deny the
11
     Secretary's motion because there are disputed issues of material fact precluding judgment as a
12
     matter of law.
13
                 **1.      The defenses relate to DOC's actual or constructive knowledge that**
14                          **employees were working overtime.**

15           There is no dispute that DOC has always paid its employees overtime that was

16   submitted for payment, whether the overtime hours were pre-authorized or not.   The overtime

17   claim in this case is that employees worked overtime that was uncompensated because they did

18   not report it.  Thus, the fact at the heart of the Secretary's allegation is that employees failed to

19   follow DOC's policy regarding working overtime.  DOC's policy is that employees are not

20   permitted to work overtime unless the employee receives prior approval or prior approval is

21   not possible due to the emergent nature of the need to exceed the 40 hour workweek.

22   However, even if the authorization process is not followed, employees are required to report

23   any overtime actually worked.

24           Courts have found employers not liable for overtime where the employer was not aware

25   of the claimed work because employees failed to follow overtime reporting procedures.  In

26   *Hertz v. Woodbury Cy., Iowa*, 566 F.3d 775 (8th Cir. 2009), the employer had a system very

DEFENDANT'S RESPONSE TO                    13        ATTORNEY GENERAL OF WASHINGTON
PLAINTIFF'S MOTION FOR PARTIAL                              Labor & Personnel Division
SUMMARY JUDGMENT                                            7141 Cleanwater Drive SW
                                                                   PO Box 40145
                                                              Olympia, WA  98504-0145
NOTED FOR AUGUST 14, 2009                                         (360) 664-4167
NO.  3:08-CV-05362-RJB

1    similar to DOC's. The county payroll office used overtime slips and vacation logs to compute

2    the police officers' time worked. When an officer worked overtime, he was to submit an

3    overtime slip to the supervisor indicating the amount of time worked in excess of the scheduled

4    hours. The supervisor approved the overtime and the slip was forwarded to the payroll office.

5    *Hertz*, 556 F.3d at 779. The Court found that the county did not have actual or constructive

6    knowledge of the claimed overtime because the employees did not follow the established

7    procedure and it would be unreasonable to require the employer to weed through non-payroll

8    records to determine whether employees were working beyond their scheduled hours. The

9    Court found that the administrative burden on the county would be severe for the "forty-some"

10   employees. *Id.* There are 872 Exhibit A employees. The administrative burden on DOC

11   would be impossible.

12   In *Newton v. City of Henderson*, 47 F.3d 746 (5th Cir. 1995), plaintiff Newton was

13   specifically told by his supervisors that he could not work unauthorized overtime. The city had

14   established specific procedures to be followed in order to receive payment for overtime. The

15   Court held that the city did not have constructive knowledge that Newton was working

16   overtime because he did not get the overtime authorized and he did not follow the procedures

17   for claiming overtime. "If we were to hold that the City had constructive knowledge that

18   Newton was working overtime because [his supervisor] had the ability to investigate whether

19   or not Newton was truthfully filling out payroll forms, we would essentially be stating that the

20   City did not have the right to require an employee to adhere to its procedures for claiming

21   overtime." 47 F.3d at 749. The Fifth Circuit reiterated this just last week in *Von Friewalde v.*

22   *Boeing*, 2009 WL 2391400, *8 (5th Cir., August 4, 2009).

23              [A]n employee has a duty to notify his employer when he is
24              working extra hours. [Citing *Newton*]. Further, it is undisputed
                that all of Boeing's employees were aware of its policy prohibiting
25              overtime work without authorization, and we have expressly
                rejected the notion that an employer does "not have the right to
26

DEFENDANT'S RESPONSE TO                          14            ATTORNEY GENERAL OF WASHINGTON
PLAINTIFF'S MOTION FOR PARTIAL                                      Labor & Personnel Division
SUMMARY JUDGMENT                                                   7141 Cleanwater Drive SW
                                                                         PO Box 40145
                                                                    Olympia, WA  98504-0145
NOTED FOR AUGUST 14, 2009                                               (360) 664-4167
NO.  3:08-CV-05362-RJB

require an employee to adhere to its procedures for claiming overtime.

*See also McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1130 (10th Cir. 1998) (employee's failure to report overtime fatal to later claim if employer had no reason to be aware of alleged overtime); *Davis v. Food Lion*, 792 F.2d 1274, 1277-78 (4th Cir. 1986) (for employer to have had constructive knowledge of alleged overtime, would have had to anticipate that employees would falsify their time in violation of established company policy); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (if employee fails to notify employer or deliberately prevents employer from acquiring knowledge of overtime work, employer not liable); *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972) (employee estopped from claiming overtime that was not reported to employer); *Harvill v. Westward Commc'ns, LLC*, 311 F. Supp. 2d 573, 584 (E.D. Texas 2004) (employer did not have constructive knowledge of alleged overtime because overtime not allowed unless authorized, employees supposed to flex their time to avoid going over 40 hours in a workweek, and employee neither flexed nor reported hours); *Slattery v. HCA Wesley Rehab. Hospital*, 83 F. Supp. 2d 1224, (D. Kansas 2000) (employer did not have actual or constructive knowledge of alleged overtime because employee specifically told not to work overtime and failed to inform employer of alleged overtime).

Thus, whether termed waiver, laches, estoppel, or something else, there is a genuine issue of material fact whether the employees followed DOC policies and thus whether DOC had actual or constructive knowledge of any alleged uncompensated overtime. Regardless, DOL bears the burden of proof that DOC knew or should have known employees were allegedly working overtime. *Davis*, 792 F.2d at 1276-77. DOC is not required to raise this as an affirmative defense. *Id.*

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

NOTED FOR AUGUST 14, 2009
NO. 3:08-CV-05362-RJB

15

ATTORNEY GENERAL OF WASHINGTON
Labor & Personnel Division
7141 Cleanwater Drive SW
PO Box 40145
Olympia, WA 98504-0145
(360) 664-4167

2.    **Laches is also a defense to DOL's equitable claim for injunctive relief with respect to recordkeeping.**

In addition, DOC raises laches as an affirmative defense with respect to the DOL finding a recordkeeping violation as part of its investigation of DOC, given that the State used the same timekeeping method in most agencies, had done so for many years, and DOL had conducted many audits of Washington state agencies in the past, knew of the state's timekeeping method and did not pursue the issue. Larsen Decl., Ex. F. DOL should not be able to claim a recordkeeping violation now after having known about the state's method and having failed to pursue it.

The defense of laches is based on a showing of prejudice by reason of the delay in bringing suit. Thus, laches may apply whether or not any statutory limitations period runs. A rebuttable presumption of the existence of the prejudice required for a laches defense is created by the "bare fact of delay" in bringing the action. *Boone v. Mech. Specialties*, 609 F.2d 956, 958 (9th Cir. 1979). DOL's delay in raising the recordkeeping issue is unreasonable and has resulted in prejudice to the State, which has worked with DOL on audits for years, because DOL never informed the State that DOL considered the State's exception timekeeping method problematic. Economically speaking, there would have been an opportunity to address the State's timekeeping method when the State purchased a new payroll system and implemented it in 2005 and 2006. Thus, DOC should be allowed to pursue laches as a bar to DOL's equitable claim for injunctive relief with respect to recordkeeping.

/ / /

/ / /

/ / /

/ / /

/ / /

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

NOTED FOR AUGUST 14, 2009
NO. 3:08-CV-05362-RJB

16

ATTORNEY GENERAL OF WASHINGTON
Labor & Personnel Division
7141 Cleanwater Drive SW
PO Box 40145
Olympia, WA 98504-0145
(360) 664-4167

| | |
|---|---|
| 1 | **IV.   CONCLUSION** |
| 2 | Based on the foregoing, DOC requests that the Court deny Plaintiff's Motion for Partial |
| 3 | Summary Judgment. |
| 4 | DATED this 10th day of August, 2009. |
| 5 | ROBERT M. McKENNA<br>Attorney General |
| 6 | |
| 7 | _____s/ Kara A. Larsen_____<br>KARA A. LARSEN |
| 8 | WSBA No. 19247<br>Assistant Attorney General<br>Office of the Attorney General |
| 9 | Labor and Personnel Division<br>PO Box 40145 |
| 10 | Olympia, WA  98504-0145<br>Phone: (360) 664-4167 |
| 11 | Fax: (360) 664-4170<br>KaraL@atg.wa.gov |
| 12 | |
| 13 | K&L Gates LLP<br>Patrick M. Madden, WSBA No. 21356<br>Steven R. Peltin, WSBA No. 28862 |
| 14 | Sieu K. Che, WSBA No. 40422<br>925 Fourth Ave., Suite 2900 |
| 15 | Seattle, WA 98104-1158<br>Phone: (206) 623-7580 |
| 16 | Fax: (206) 623-7022<br>Patrick.madden@klgates.com |
| 17 | Steve.peltin@klgates.com<br>Sieu.che@klgates.com |
| 18 | |
| 19 | Attorneys for the Defendant<br>State of Washington, Department of Corrections |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

NOTED FOR AUGUST 14, 2009
NO.  3:08-CV-05362-RJB

17

ATTORNEY GENERAL OF WASHINGTON
Labor & Personnel Division
7141 Cleanwater Drive SW
PO Box 40145
Olympia, WA  98504-0145
(360) 664-4167

1

2

PROOF OF SERVICE

3        I hereby certify that on August 10, 2009, I electronically filed the foregoing with the

4   Clerk of the Court using the CM/ECF System which will send notification of such filing to the

5   Following:  ABIGAIL DAQUIZ and BRUCE L. BROWN, Counsel for Plaintiff HILDA L.

6   SOLIS, Secretary of Labor, United States Department of Labor.

7

8                                        /s/ Kara Larsen
                                         KARA LARSEN
9                                        WSBA No. 19247
                                         Assistant Attorney General
10                                       Attorney for the Defendant
                                         Office of the Attorney General
11                                       Labor and Personnel Division
                                         PO Box 40145
12                                       Olympia, WA  98504-0145
                                         Phone: (360) 664-4167
13                                       Fax: (360) 664-4170
                                         KaraL@atg.wa.gov

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S RESPONSE TO                          18          ATTORNEY GENERAL OF WASHINGTON
PLAINTIFF'S MOTION FOR PARTIAL                                     Labor & Personnel Division
SUMMARY JUDGMENT                                                  7141 Cleanwater Drive SW
                                                                        PO Box 40145
NOTED FOR AUGUST 14, 2009                                         Olympia, WA  98504-0145
NO.  3:08-CV-05362-RJB                                                 (360) 664-4167